In re Herbert A. PINKERT and wife, Wanda Zell Pinkert, Debtors.

Herbert A. PINKERT and wife, Wanda Zell Pinkert, Plaintiffs,

v.

FARMERS HOME ADMINISTRATION (FmHA), An Agency of the United States of America, Defendant.

No. 586–50333.

Bankruptcy No. 586–50333.

Adv. No. 586–5046.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

July 1, 1987.

---

11. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

James A. Walters, Strasburger & Price, Lubbock, Tex., for debtors.

Nancy Koenig, Asst. U.S. Atty., Lubbock, Tex., for FmHA.

### MEMORANDUM OF OPINION CONCERNING SETOFF

JOHN C. AKARD, Bankruptcy Judge.

The Debtors, Herbert A. Pinkert and wife, Wanda Zell Pinkert, filed a Complaint against the Farmers Home Administration (FmHA) seeking turnover of approximately $21,000.00 in payments due to the Debtors

1. Deficiency payments arise when the market price received by the farmer for his crops is less than the target price established by the Commodity Credit Corporation.

2. Disaster payments represent payments to a farmer whose crop has been destroyed or damaged as a result of wind, rain, hail or other natural disaster.

3. The FmHA acknowledged that it does not have a lien on crops planted postpetition and withdrew its claim to 25 bales of cotton which are presently in storage. The parties estimated the value of that cotton to be $5,600.00.

from the Agricultural Stabilization and Conservation Service (ASCS) representing deficiency payments[1] and crop disaster payments[2] for the 1986 crop year.[3] FmHA filed a claim in these proceedings for $322,681.07 evidenced by eight promissory notes dated from June 4, 1979 to June 12, 1985. The notes are secured by liens on the Debtors' farm, farm machinery, livestock and crops. FmHA seeks to set off the 1986 ASCS payments against these obligations.[4]

### Facts

On March 24, 1986, the Debtors signed contracts to participate in the 1986 ASCS programs. The contracts were approved on behalf of the ASCS by the appropriate county committees in late April, 1986.[5]

The Debtors filed their Petition for relief under Chapter 11 of the Bankruptcy Code on May 30, 1986. Mr. Pinkert testified he did not start planting until June 19, 1986. He explained that 1986 was a dry year and planting could not begin until there had been sufficient rainfall—which did not occur until mid-June. During the Summer of 1986 the Debtors received some "advance deficiency payments" from the ASCS.[6] These funds were used to plant and cultivate the crops and for living expenses. Mr. Pinkert testified that his family had a very meager living during 1986 and that they were able to get by because he was able to do hay-baling for other farmers. He managed to conduct his farming operations during 1986 without having to borrow any funds. He estimated that his 1986 crop paid its own way. The labor was performed by Mr. Pinkert and one hired

4. The FmHA does not seek to set off 1987 ASCS payments.

5. There were several contracts, each covering different parcels of land. Some were not approved by the appropriate committees until after the Chapter 11 proceeding was filed. FmHA does not claim monies under those contracts approved postpetition.

6. The FmHA does not seek a refund of these payments.

hand. In 1986 Mr. Pinkert farmed slightly in excess of 1,000 acres in Lubbock and Lynn Counties, Texas. He had some general estimates of the costs of his farming operations, but did not present any financial data on his 1986 farming operations.

Mr. Pinkert testified that, in order to comply with the government programs, he could plant only a specified number of acres and had to conform to a number of other regulations. He stated that when his planting was completed, he always asked someone from the local ASCS office to measure his fields to be sure that he did not exceed the permitted acreage.

Representatives of the ASCS offices in both counties testified that the Debtors' were signed up in the 1986 programs in the normal manner and without any attempt to create an obligation which could be offset by the FmHA.

The Debtors assert a number of alternative grounds for their claim that the ASCS payments should be turned over to them.

### Waiver

First, they assert the fact that since the advance deficiency payments were paid only to the Debtors, and not to the Debtors and the FmHA, constitutes a waiver of any claim the FmHA has to the balance of the 1986 ASCS payments. In order for a waiver to exist, there must be knowledge on the part of the party making the waiver that some further right exists. It is certainly not common practice, and would be impractical, to require the ASCS to check with all government agencies before making a distribution to a farmer. Apparently FmHA did not notify the ASCS of its claim at that time. Thus, no knowledgeable waiver existed.

### Offset

The most serious challenge raised by the Debtors is that no right of setoff exists under § 553.[7] In general, § 553(a) allows

"a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." The thrust of the Debtors' argument is that everything which gave rise to their rights to the ASCS payments (planting, cultivating, disaster, and harvesting what remained) occurred after they filed their bankruptcy petition. Thus, on the date of filing, there was no obligation of the ASCS owed to the Debtors. They had to "earn" it after the petition was filed. The Debtors analogize this to the situation of an after-acquired property clause in a security agreement covering crops where crops planted postpetition are not covered by the prepetition after-acquired property clause. *Lemley-Cabbiness Farms v. FDIC (In re Lemley)*, 65 B.R. 185 (Bankr.N.D.Tex.1986); *First State Bank of Abernathy v. Holder (In re Nivens)*, 22 B.R. 287 (Bankr.N.D.Tex.1982).

The Debtors distinguish *United States v. Parrish (In re Parrish)*, Unpublished Opinion of November 12, 1986, Bankruptcy No. 585–50070, CA–5–86–191, United States District Court, Judge Halbert O. Woodward [8] on grounds that it related to a Chapter 7 proceeding.

The Debtors do not dispute that the United States Government may setoff funds owed by one agency in order to collect debts owed to other agencies. *Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed.2d 835 (1946).

In *Parrish*, the District Court found "well-reasoned and persuasive" the decision of the United States District Court in Minnesota in *Moratzka v. United States (In re Matthieson)*, 63 B.R. 56 (D.Minn. 1986). *Matthieson* involved ASCS deficiency payments and held that they were prepetition obligations subject to setoff because the contract in question was entered

---

7. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to Section numbers are to Sections in the Bankruptcy Code.

8. Decision by the Honorable Halbert O. Woodward, Sr., United States District Judge on appeal of a case from this Division of the United States Bankruptcy Court for the Northern District of Texas.

into prepetition. "Where an obligation exists prior to bankruptcy, it is irrelevant that the exact amount of liability will not be determined until after the bankruptcy petition was filed." *Matthieson, supra* at 59 (citations omitted).

The Debtors correctly assert that *Matthieson* involved several Chapter 7 cases. On the other hand, the *Matthieson* Court thoroughly reviewed and rejected the arguments of the prior Judge of this Court in *Hill v. Farmers Home Administration (In re Hill)*, 19 B.R. 375 (Bankr.N.D.Tex.1982) wherein was raised the very issue before the Court at this time. *Hill* was a Chapter 11 proceeding and the Court concluded that disaster payments by ASCS were postpetition monies. The Court in *Matthieson*, having expressly rejected those arguments, and the Court in *Parrish*, having expressly adopted the reasoning in *Matthieson*, the law in this District is well-established and must be followed by this Court.[9]

The Debtors strongly urge this Court to follow *Walat Farms, Inc. v. United States (In re Walat Farms, Inc.)*, 69 B.R. 529 (Bankr.E.D.Mich.1987) in which the Court held that the ASCS contracts were executory contracts which were not binding on the Debtor until assumed by the Debtor postpetition—which meant that they were postpetition contracts and, therefore, their proceeds were received postpetition. The *Walat* Court makes a strong argument for its position, but the question of whether an executory contract assumed postpetition is a prepetition or a postpetition obligation is not ripe for determination by this Court. In any event, this Court is bound by the rulings of the District Court under which it serves.

### Exception Under § 553(b)(1)

■ Next the Debtors argue that any setoff rights are subject to an exception under § 553(b)(1). This section relates to a

creditor who "offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days *before* the date of the filing of the petition" (emphasis added). This is commonly known as the "improvement of position test" and only relates to offsets made prepetition. In this instance, the contract was made within 90 days prior to the filing of the petition, but there was no offset or attempted offset until after the petition was filed. This section is clearly inapplicable.

### Costs of Preserving the Collateral

■ The Debtors assert that pursuant to § 506(c) they may recover the reasonable value of farming in 1986, including the reasonable enhancement value of their collateral. Section 506(c) provides that the Trustee (or Debtor-in-Possession) may recover "from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." The Debtors' position is that they are entitled to deduct all of their 1986 farming costs from the pending ASCS payments. However, they do not attempt to give credit for the advance deficiency payments they used, or for the proceeds they actually received from crop sales. Mr. Pinkert testified that he thought his 1986 farming operation "about broke even." No evidence before the Court detailed the Debtors' actual 1986 farming expenses. In order for the Debtors to recover under this provision, they must show a complete financial picture for 1986 segregated by their various fields to tie each expense to the specific ASCS contract in question. At hearing, the Debtors' gave ball-park estimates of their entire farming operation expenses and attempted to charge all of them to the monies on hand. In a proper case, the Court might allow Debtors to recover

---

9. This Court reached a similar conclusion in its unpublished Order entered August 10, 1986, in *(In re Waldron)*, Bankruptcy No. 285–20425 in the Northern District of Texas which was affirmed by United States District Judge Mary Lou Robinson of the Northern District of Texas in a published Opinion, *Waldron v. Farmers*

*Home Administration*, 75 B.R. 25 (1987) in Cause No. CA–2–86–290. The facts in *Waldron* are somewhat different in that the Debtors filed for relief under Chapter 11 on December 12, 1985, which was at the end of the crop year.

actual losses incurred by them and otherwise uncompensated reasonable living expenses out of these funds. On the testimony presented, however, the Court cannot award any payments to the Debtors in this case.

### Equities of the Case

■ In a similar vein, the Debtors rely on § 552(b) which provides that if a security interest created prepetition extends to property acquired by the Debtor postpetition, the Court is to recognize that security interest "except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." The Court would apply the same standards and criteria to a payment under this section as it would to a payment under § 506(c) as described above. The Debtors assert that they have enhanced the value of the collateral of the FmHA; but that was not shown by the testimony and evidence at hearing.

### Preference

■ In argument, the Debtors asserted that the ASCS contract was a preference under § 547(b). In order for there to be a preference, there must be a "transfer of an interest of the debtor in property." *Id.* Clearly, entering into a contract with the ASCS did not constitute a transfer of property. Thus, there can be no preference.

### Conclusion

The Debtors' turnover complaint is denied and the FmHA's Motion to be Relieved from the Automatic Stay is granted.

Order accordingly.[10]

---

**10.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.