Monte Ross WALDRON and Masako Waldron, Appellants,

v.

FARMERS HOME ADMINISTRATION, Commodity Credit Corporation, Appellees.

No. CA-2-86-290.

United States District Court, N.D. Texas, Amarillo Division.

March 25, 1987.

Thomas Paty Stamps, Atlanta, Ga., Dan C. Coffey, Dalhart, Tex., for appellants.

James P. Laurence, Asst. U.S. Atty., Coleman, Young, Culton, Morgan, Britain & White, Amarillo, Tex., for appellees.

## ORDER

MARY LOU ROBINSON, District Judge.

Debtors Monte Ross Waldron and Masako Waldron appeal two bankruptcy court orders. On August 19, 1986, the Bankruptcy Court granted the motion to modify stay

filed by the United States on behalf of two of its agencies—the Farmers Home Administration (FmHA) and the Commodity Credit Corporation (CCC). On September 15, 1986, the Bankruptcy Court denied debtors' motion to alter or amend judgment and motion for new trial.

The debtors are farmers who entered into a farm and home plan with the FmHA on January 25, 1985. In the plan the debtors estimated that the crop income for 1985 would be $176,663.00. In fact, the crop income was substantially less and on December 12, 1985, debtors filed a voluntary petition for bankruptcy under Chapter 11.

The farm and home plan shows that the debtors planned to receive a $96,910.00 loan from the FmHA. $12,000.00 was designated for family living expenses and $84,910.00 was designated for farm operating expenses. The debtors did receive the loan. The loan was secured by security agreements covering crops, livestock and farm equipment. The farm and home plan does not set forth a specific distribution of the crop proceeds but does state that the debtors planned to pay $48,000.00 to Bryant and Fuller in November 1985, $69,822.00 to FmHA on loan # 44–03 in December 1985, $11,400.00 to Allis-Chalmers in December 1985, and $106,842.00 to FmHA on loan # 44–04 all out of crop proceeds.[1] Because the crop proceeds for 1985 were only $56,899.95 plus $5,953.47 in deficiency payments, there were insufficient funds to make the planned debt payments.

On May 14, 1986, the United States filed a motion to modify the stay. By the motion the United States sought to modify the automatic stay imposed by debtors filing of bankruptcy to permit it to foreclose in its collateral (the crop proceeds) and to make a setoff from the amounts owed to debtors in the deficiency payments from the CCC to the amounts debts owed the FmHA. The Bankruptcy Court modified the automatic stay to permit the foreclosure and setoff.

Debtors filed a motion to alter or amend the judgment and a motion for a new trial

raising issues under 11 U.S.C. § 506 (costs and expenses of preserving the collateral of FmHA), and 11 U.S.C. § 541 (right to individual income). Debtors also questioned whether the crop proceeds and deficiency payments were necessary for an effective reorganization. The Bankruptcy Court denied both motions.

Debtors now appeal both Bankruptcy Court orders. While the brief sets forth six issues to be presented on appeal, not all of them are fully argued in the argument and citation of authority. Generally debtors contend that FmHA has waived any lien it might have had on the crop proceeds and deficiency payments and that consequently FmHA was not entitled to foreclose on the collateral or to issue a stay.

A district court reviewing findings of fact of a bankruptcy court shall not set aside the findings unless they are clearly erroneous. Bankruptcy Rule 8013. "Where there are two permissible views of the evidence, the factfinders choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

The bankruptcy court's conclusions of law are subject to plenary review. *Matter of Missionary Baptist Foundation of America*, 712 F.2d 206, 209 (5th Cir.1983). If an improper legal standard is applied to a finding of fact that finding loses the insulation of the clearly erroneous rule. *Id.*

Having applied the above standards to the two bankruptcy court orders the court holds that the orders should be affirmed.

■ The FmHA has not waived the lien it had on the crop proceeds. Although debtors argue that the farm and home plan shows an agreement between debtors and the FmHA to pay the debts to Allis-Chalmers and Bryant and Fuller before payment to the FmHA, such is not the case. The listing of the debts does not show any agreement as to the priorities of payments. The plan merely shows an intent to pay

---

1. This Court shares the confusion of the bankruptcy judge concerning the magic of farm financing where one can plan to repay debts totalling $235,065.00 from anticipated income of $176,663.00.

certain debts in certain months. The crop proceeds were insufficient to make those payments. Additionally the court notes that the farm and home plan is a plan and not an agreement between the debtors and the FmHA. The plan clearly states that it is "a prospective plan only and does not release the security interest of the government in any security."

 Debtors also argue that FmHA must release $12,000.00 to them as living expenses before it forecloses on the crop proceeds. The farm and home plan shows that $12,000.00 was designated for living expenses when the FmHA made the $96,410.00 loan to debtors. Nothing in the farm and home loan plan shows an intent to use the crop proceeds for living expenses. Nor can such an intent be inferred. Debtors listed the cash family expenses for 1985 as $12,000.00. Debtors received $12,000.00 for living expenses as part of the 1985 FmHA loan. Appellants' living expenses have been met by the FmHA loan. FmHA does not have to release $12,000.00 from the cash proceeds.

Additionally, the court notes that debtors have never formally requested the FmHA to release the living expenses. Debtors' reliance on *Coleman v. Block*, 632 F.Supp. 997 (D.N.D.1986) is misplaced because the injunctive relief granted there is limited to situations where "FmHA denies a request for release of FmHA's security interest for purposes of paying living and operating expenses." *Id.* at 1004. Because debtors have voluntarily filed for bankruptcy they must follow the procedures of both the bankruptcy code and the FmHA to be entitled to a release of the proceeds.

Debtors also contest whether the FmHA is entitled to set off the deficiency payments due them from another federal program. There is no dispute that debtors qualified for the deficiency payments arising from the 1985 crop program. The events which entitled debtors to these payments all occurred pre-petition. The debt to the FmHA was incurred prior to the filing of the bankruptcy petition. Agencies of the United States government may make setoffs to collect debts owed to other United States agencies. *Cherry Cotton Mills v. United States*, 327 U.S. 536, 539, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946). FmHA was entitled to the setoff.

Debtors also allege error in the bankruptcy order for not allowing debtors' costs and expenses under 11 U.S.C. § 506(c), for denying the debtors their rights to individual income under 11 U.S.C. § 541(a)(6) and for finding that the funds in question were not necessary to an effective reorganization. Debtors did not brief these issues but asked the Court to remand the cause to the bankruptcy court to determine the exact amounts to which they claim they are entitled. The bankruptcy court order of September 12, 1986, specifically denied all of these requests. The Court finds no error in the Bankruptcy Court opinion which sets forth the reasons for the decision.

Finding no error in the Bankruptcy Court order, it is AFFIRMED.

It is so ORDERED.