In re Larry Lee BUSKE and Ann Deelane Buske, Debtors.

Larry Lee BUSKE and Ann Deelane Buske, Plaintiffs,

v.

Myrtle McDONALD, Defendant,

v.

UNITED STATES of America, Intervenor.

Bankruptcy No. 586–50296.
Adv. No. 586–5100.

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

July 1, 1987.

R. Byrn Bass, Jr., The Bass Law Firm, Lubbock, Tex., for debtors.

Myrtle McDonald, Blumrosen & McDonald, Lubbock, Tex., trustee.

Nancy Koenig, Asst. U.S. Atty., Lubbock, Tex., for FmHA.

## MEMORANDUM OF OPINION

JOHN C. AKARD, Bankruptcy Judge.

This Adversary Proceeding was commenced by Larry Lee Buske and Ann Deelane Buske, Debtors in proceedings under Chapter 7 of the Bankruptcy Code (Debtors), against Myrtle McDonald, the Trustee-in-Bankruptcy (Trustee) to recover payments which were to have been made to the Debtors postpetition on a prepetition contract with the Commodity Credit Corporation (CCC) through the Agricultural Stabilization and Conservation Service (ASCS). The United States of America intervened on behalf of the Farmers Home Administration (FmHA) asserting the right to set off the ASCS payments against the FmHA's claim of $294.421.07 principal and $88,169.63 interest accrued to the date of the filing of the Bankruptcy Petition. The debt to FmHA arises out of nine separate notes executed between January 9, 1981 and April 16, 1985.

### Facts

The matter was submitted to the Court on the following stipulated facts:

1. On March 11, 1986, Debtors enrolled in the Government 1986 Farm Program.

2. On May 12, 1986, Debtors filed their Petition in bankruptcy under Chapter 7 of Title 11 of the United States Code.

3. Subsequent to March 12, 1986, and the filing of Debtors' Petition in bankruptcy, Debtors planted their crops.

4. Debtors, prior to May 12, 1986, the date on which this case was filed, became eligible to receive unearned advance deficiency payments and upon full compliance with the terms of Debtors' contract with CCC would become eligible for further payments. A determination that Debtors had complied with all terms and

conditions of their contract with CCC could not have been made on the date the Petition was filed.

5. Debtors, after May 12, 1986, expended time, labor and money in order to get their crop certified which enabled them to earn the Government payments and benefits to which they were entitled to receive under the 1986 Farm Program, and had they not expended such labor, time and money, their right to earn those checks and commodity certificates would not have come into existence.

6. The value of the labor, time and money spent in order for Debtors to get their crop certified was $19,714.95.

7. In spite of demand, the ASCS office and the United States have refused to release Debtors' Government payments and benefits for the 1986 farm year based on the FmHA's and the United States' alleged right in the check or commodity certificates.

8. As a result of Debtors' participation in the 1986 farm program and their having done the work necessary to get their crop certified, Debtors have received or are entitled to receive Government checks and/or generic cotton certificates in the approximate sum of $31,679.19, those payments and benefits having been unearned as of the date this case was filed.

9. Had Debtors not continued to farm the land postpetition, the deficiency and other Government payments referred to above would not have been "earned" and would not have been available for set-off.

### Issues

The contest is between the Debtors and the FmHA. The Trustee hopes to find some property for distribution to the prepetition unsecured creditors but admits that there is little likelihood of there being

funds for that purpose arising out of this proceeding.

The FmHA asserts that the holding in *United States v. Parrish* (*In re Parrish*) (Northern District, Texas, 1986)[1] is determinative of this issue. The FmHA also points to this Court's unpublished Order entered August 10, 1986, in *In re Waldron*, Bankruptcy No. 285–20425 in the Northern District of Texas which was affirmed by United States District Judge Mary Lou Robinson of the Northern District of Texas in a published Opinion, *Waldron v. Farmers Home Administration*, 75 B.R. 25 (1987) in Cause No. CA–2–86–290.

The Debtors acknowledge that they entered into contracts for the 1986 Farm Program prior to the filing of their Bankruptcy Petition. They assert, however, that they performed all acts which were necessary for them to earn those farm program benefits after the Bankruptcy Petition was filed. They point out that if they had not planted, cultivated and harvested in accordance with the provisions of the contract and the appropriate regulations of the CCC and ASCS, that their benefits would have been reduced and that there might have been no benefits whatsoever.[2]

In similar cases the argument has been made that the contract is an executory contract (requiring the performance of both parties) which is to be accepted or rejected by the Debtor postpetition; if it is accepted, it results in a postpetition contract which cannot be offset against prepetition debts. In this regard, the Debtors rely on *Walat Farms, Inc. v. United States* (*In re Walat Farms, Inc.*), 69 B.R. 529 (Bankr.E.D.Mich.1987).

In the alternative, the Debtors assert that they are entitled to the cost of producing the crop including reasonable compensation for their own labor. They also assert that allowing the FmHA to offset its debt against the Debtors' ASCS payments would constitute a preference.

---

1. Unpublished Opinion of November 12, 1986, Bankruptcy No. 586–50211–7, Civil Action CA–5–86–200, United States District Court for the Northern District of Texas, Judge Halbert O. Woodward.

2. The Court understands that the contracts provide for damages in favor of CCC if the farmer does not carry out his obligations under the contract.

### Discussion

#### Offset

█ Subject to a few exceptions, § 553 of the Bankruptcy Code[3] allows a creditor to offset a mutual debt owing by such creditor to the Debtor that arose before the commencement of the case against a claim of such creditor against the Debtor that arose before the commencement of the case. The Debtors acknowledge that the United States Government may setoff funds owed by one agency in order to collect debts owed to other agencies. *Cherry Cotton Mills v. United States*, 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed.2d 835 (1946). The FmHA acknowledges that if the contract between the Debtors and CCC had been finalized after the filing of the Bankruptcy Petition, setoff would not be proper.[4]

The United States District Court for the Northern District of Texas faced this issue in *Parrish* and *Waldron, supra.* In both instances, the proceeds of the prepetition contract were subject to offset. The *Parrish* Court found "well-reasoned and persuasive" the decision of the Minnesota District Court in *Moratzka v. United States (In re Matthieson)*, 63 B.R. 56 (D.Minn. 1986). *Matthieson* involved ASCS deficiency payments and determined that they were prepetition obligations subject to setoff because the contract in question was entered into prepetition. "Where an obligation exists prior to bankruptcy, it is irrelevant that the exact amount of liability will not be determined until after the bankruptcy petition was filed." *Matthieson, supra* at 59.[5] Thus, the law in this District is well established and must be followed by this Court. Therefor, the Court does not reach the argument that the ASCS contracts are executory contracts subject to acceptance or rejection by the Debtor postpetition.

#### Preference

█ The Debtors assert that the CCC contract was a preference under § 547(b). In order for there to be a preference, there must be a "transfer of an interest of the debtor in property." Clearly, entering into a contract with the CCC did not constitute a transfer of property. Thus, there can be no preference.

#### Costs of Raising the Crops

█ Neither *Parrish* nor *Waldron* addressed the issue of whether the Debtor was entitled to compensation for his postpetition expenses and labor to produce the crops upon which the ASCS payments were based. It would not seem to make any difference whether the payments were deficiency payments[6] or are crop disaster payments.[7,8]

Upon the filing of a bankruptcy proceeding, the Debtor who has previously signed up for government farm programs is faced

---

**3.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to Section numbers are to Sections in the Bankruptcy Code.

**4.** The Debtor applies to participate in farm programs. The application is reviewed and either approved or disapproved by an ASCS County Committee. The approval of the County Committee is apparently the last step in the formation of the contract and thus, the date of approval by the County Committee would be controlling.

**5.** *Matthieson* involved several Chapter 7 cases. This is also a Chapter 7 case. In similar matters, the Court has heard the argument that a different rule should be applied in Chapter 11 reorganizations. The *Matthieson* Court thoroughly reviewed and rejected the arguments of the prior Judge of this Court in *Hill v. Farmers Home Administration (In re Hill)*, 19 B.R. 375 (Bankr.N.D.Tex.1982) wherein the very issue before the Court at this time was raised. *Hill* was a Chapter 11 proceeding in which the Court concluded that disaster payments by ASCS were postpetition monies.

**6.** Deficiency payments arise when the market price received by the farmer for his crops is less than the target price established by the CCC.

**7.** Disaster payments represent payments to a farmer whose crop has been destroyed or damaged as a result of wind, rain, hail or other natural disaster. Disaster payments should not be confused with crop insurance.

**8.** The facts in *Waldron* differ in that the Debtors filed for relief under Chapter 11 on December 12, 1985, at the end of that crop year.

with a decision. If he has no desire to continue farming, he can move into another occupation and his obligations under the CCC contracts will be discharged in the bankruptcy. If he wishes to continue farming, however, he wants to participate in the Federal farm programs.[9] Since the Debtor can file for bankruptcy at any time, the crop in question could be at any stage of production—from not yet planted to almost harvested. It would be inequitable and emotionally shattering to require a farmer to stop production at the time he files the Bankruptcy Petition and insist that he wait until the next crop year before resuming farming. He and his family have to have something on which to live in the interim. The practical solution is to allow the farmer to complete his contract with the CCC and be paid for his postpetition expenses and postpetition labor out of the ASCS payments.[10]

The offset provisions of § 553 of the Bankruptcy Code do not contemplate these type of expenses. An analogy, however, can be made to § 552 which relates to prepetition security interests covering property the Debtor acquired before commencement of the case and to "proceeds, product, offspring, rents, or profits of such property" acquired after the filing of the Petition. This section specifically allows the Court to make adjustments "based on the equities of the case." Thus, where the Debtor gives a bank a lien on his crops, plants them and then files a bankruptcy proceeding, the Court is permitted to look at the Debtor's postpetition labor and expense with respect to that crop (in addition to other factors) in determining how the proceeds of the crop will be shared be-tween the Debtor and the bank. It is only equitable that a similar arrangement should be made with respect to ASCS payments.

This result does not harm the FmHA because a Debtor will not expend funds and labor to produce a crop from which he will receive no reimbursement whatsoever. He will simply abandon the crop, regardless of its stage of production, and the ASCS will cancel its payments to the Debtor resulting in no money being available for the Debtor or for the FmHA. Hopefully, in most situations as in this case, the ASCS payments will exceed the Debtor's actual expenses and labor.

In addition, § 506(c) allows the Debtor to recover from property securing an allowed secured claim "the reasonable, necessary costs and expenses of preserving, or disposing of such property to the extent of any benefit to the holder of such claim." In this instance, if the Debtor does not complete the crop, it would certainly be a detriment to the FmHA so that the Debtor's postpetition expenses and labor could be recovered as necessary costs and expenses of preserving the ASCS payments for the benefit of the FmHA.

*Conclusion*

The parties stipulated that the ASCS payments total $31,679.19 and that the value of the postpetition labor, time and money spent by the Debtors to get the crop certified for ASCS purposes was $19,714.95. This Court concludes that the Debtors are entitled to recover $19,714.95

---

**9.** Even where filing for a liquidation under Chapter 7 of the Bankruptcy Code, many farmers wish to continue farming. Typically a farmer tries to retain his 200–acre homestead and a small amount of equipment. The other real property and equipment will be foreclosed upon. Customarily, each farmer has several contracts with the CCC, each contract covering a specified parcel or parcels of real estate. Quite often the Debtor has a separate CCC contract with respect to the homestead, thereby allowing him to participate in the farm pro-grams only with respect to the property which he retains. The problem is more acute if the farmer files for a reorganization under Chapter 11, 12 or 13.

**10.** In some instances it might be more equitable to allow the Debtor to recover his postpetition expenses and a reasonable postpetition living expense for the Debtor and his family. This determination would be based upon the facts of the individual case and would require that other income and expenses be taken into account.

from the ASCS payments with the remaining balance to be paid to the FmHA.

Order accordingly.[11]

11. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to

Bankruptcy Rule 7052.