In re Jerry Garland **EVATT** and Carol June Evatt, Debtors.

Bankruptcy No. 88–4446–TS.

United States Bankruptcy Court, W.D. Oklahoma.

Jan. 27, 1989.

Herbert M. Graves, Joel W. Harmon, Susan Dennehy Conrad, Sullivan, Graves & Densmore, Oklahoma City, Okl., for debtor.

Kay D. Sewell, Asst. U.S. Atty., Oklahoma City, Okl., for FmHA.

W. Rogers Abbott, II, Abbott & Gordon, Oklahoma City, Okl., for trustee.

Charles R. Underwood, Rick Poland, Oklahoma City, Okl., amicus brief on behalf of other chapter 12 debtors similarly situated.

Table of Contents

|                                                                                          | Page |
| ---------------------------------------------------------------------------------------- | ---- |
| I. Introduction                                                                          | 407  |
| II. Facts                                                                                | 408  |
| III. Applicable Law                                                                      | 409  |
| A. Establishment of Independent Right to Setoff                                          | 409  |
| B. Elements of § 553                                                                     | 410  |
| 1. Pre–Petition Debt Owed Creditor to Debtor                                             | 410  |
| 2. Pre–Petition Debt Owed Debtor to Creditor                                             | 412  |
| 3. Mutuality of Obligation                                                               | 412  |
| a. Are FmHA and ASCS/CCC the same entity for setoff purposes?                            | 412  |
| b. Are the pre-petition debtor and debtor-in-possession the same entity for setoff purposes? | 413  |

| | | Page |
|---|---|---|
| | C. Applicability of § 362 | 414 |
| | D. Equitable Discretion of the Bankruptcy Court | 414 |
| IV. | Discussion | 414 |
| | A. Agreement #1 | 415 |
| | B. Agreement #2 | 415 |
| | C. Agreements #3–#6 | 415 |
| | D. Section 362(d) | 416 |
| V. | Decision | 416 |

ORDER DENYING IN PART AND
GRANTING IN PART SETOFF OF
ENTITLEMENT PAYMENTS

JOHN TeSELLE, Bankruptcy Judge.

## I. INTRODUCTION

On September 6, 1988, the United States of America, on behalf of its agency, Farmers Home Administration (hereinafter referred to as the "FmHA" or the "Creditor") filed a Motion and Brief for Relief from Automatic Stay to Allow Setoff of USDA Entitlement Payments (hereinafter referred to as "FmHA's Motion" and the "FmHA's Brief"). Debtors filed an Objection to Motion and Brief for Relief from Automatic Stay to Allow Setoff of U.S.D.A. Entitlement Payments on September 22, 1988. Trustee's Response to FmHA's Motion and Brief for Relief from Automatic Stay to Allow Setoff of USDA Entitlement Payments was filed September 30, 1988. Also filed on September 30, 1988, was Debtors' Brief in Support of Objection to Motion and Brief for Relief from Automatic Stay to Allow Setoff of U.S.D.A. Entitlement Payments (hereinafter referred to as the "Debtors' Brief"). FmHA's Response to Debtors' and Trustee's Objection to Offset was filed October 18, 1988. The matter was heard October 20, 1988, was taken under advisement, and the parties were given ten days to submit supplemental briefs.

FmHA's Supplemental Brief in Support of Setoff was filed on October 31, 1988. An Amicus Brief in Objection to Motion by United States of America for Modification of Stay to Setoff (hereinafter referred to as the "Amicus Brief") was filed November 2, 1988, by Charles R. Underwood. On November 8, 1988, FmHA's Response to Amicus Brief Objecting to Motion for Modification of Stay to Offset (hereinafter referred to as the "FmHA's Response to Amicus Brief") was filed.

As evidenced by the pleadings, this matter comes before the Court on FmHA's motion for relief from the automatic stay. FmHA seeks to offset entitlement payments potentially due Debtor Jerry Evatt from another agency contained within the Department of Agriculture against debt owed FmHA by Debtors.

This issue has not been previously addressed by this district. The extensive briefing of this matter indicates the significance of the outcome to all parties involved. The Court recognizes as well the potential far-reaching implications of this decision.

After due review and consideration of the motions, briefs, and supporting documents submitted by the parties, the Amicus Brief,[1] and the arguments of counsel, the Court concludes that FmHA's Motion should be denied in part and granted in part.

---

1. FmHA's Response to Amicus Brief asserts that because the Amicus Brief was submitted by a party without direct pecuniary or personal interest in these proceedings, the arguments

## II. FACTS

On February 24, 1984, Jerry Garland Evatt and Carol June Evatt (hereinafter referred to as the "Debtors") executed a promissory note in favor of FmHA in the original principal amount of $200,000.00, with interest on the unpaid principal balance at the rate of 10.75% per annum (hereinafter referred to as the "Original Note"). Simultaneously, Debtors executed a real estate mortgage in favor of FmHA on real property located in Osage County, Oklahoma. The Original Note was reamortized when Debtors subsequently executed a promissory note in the original principal amount of $217,553.43 in favor of FmHA, with interest on the unpaid principal balance at the rate of 5.25% per annum. As of July 11, 1988, Debtors were jointly and severally obligated to FmHA in the amount of $257,687.37 (hereinafter referred to as the "Indebtedness").

Prior to filing for bankruptcy protection, Jerry Evatt (hereinafter sometimes referred to as the "Debtor," which referral will identify Mr. Evatt in his capacity as pre-petition debtor) signed a series of agreements (hereinafter referred to as the "Agreements") in favor of Commodity Credit Corporation (hereinafter referred to as the "CCC"). CCC's programs are administered by the Agricultural Stabilization and Conservation Service (hereinafter the "ASCS"). CCC, ASCS and FmHA are separate agencies under the jurisdiction of the Department of Agriculture.

The Agreements between Debtor and CCC, and the amounts due Debtor from ASCS/CCC on each are as follows:

1. Farm Storage Note and Security Agreement dated August 8, 1985, in the original principal amount of $68,060.00, which Debtor was to satisfy May 31, 1986, by payment or by delivery to CCC of a quantity of the collateral commodity or other eligible commodity having a settlement value equal to the outstanding balance of the loan (hereinafter referred to as "Agreement # 1"). According to ASCS/CCC, Debtor was to potentially receive $1,142.85 on July 20, 1988;

2. Conservation Reserve Program Contract, Farm I.D. 354, dated February 26, 1987, which requires Debtor to implement certain conservation practices for ten crop years and provides for an annual payment of $7,182.00 (hereinafter referred to as "Agreement # 2"). According to ASCS/CCC, Debtor was to potentially receive $7,182.00 on October 1, 1988;

3. Contract to Participate in the 1988 Price Support and Production Adjustment Programs, Farm I.D. 387, dated March 10, 1988, providing for a certain acreage to be taken out of production and devoted to conservation practices through December 31, 1988 (hereinafter referred to as "Agreement # 3"). According to ASCS/CCC, Debtor was to potentially receive $2,329.00 and $475.95 in December, 1988, and will potentially be eligible to receive $234.80 in July, 1989;

4. Contract to Participate in the 1988 Price Support and Production Adjustment Programs, Farm I.D. 312, dated March 30, 1988, providing for a certain acreage to be taken out of production and devoted to conservation practices through December 31, 1988 (hereinafter referred to as "Agreement # 4"). According to ASCS/CCC, Debtor was to potentially receive $4,771.00 and $974.53 in December, 1988, and will potentially be eligible to receive $529.00 in April, 1989, and $480.00 in July, 1989;

5. Contract to Participate in the 1988 Price Support and Production Adjustment Programs, Farm I.D. 267, dated March 30, 1988, providing for a certain acreage to be taken out of production and devoted to conservation practices through December 31, 1988 (hereinafter referred to as "Agreement #5"). According to ASCS/CCC,

presented therein should not be considered. The Court notes that all parties, including FmHA, agreed to allow the filing of the Amicus Brief. Thus, the Amicus Brief was included among the materials considered in arriving at this decision.

Debtor was to potentially receive $2,610.00 and $799.50 in December, 1988, and will potentially be eligible to receive $349.42 in July, 1989;

6. Contract to Participate in the 1988 Price Support and Production Adjustment Programs, Farm I.D. 2327, dated March 30, 1988, providing for a certain acreage to be taken out of production and devoted to conservation practices through December 31, 1988 (hereinafter referred to as "Agreement #6"). According to ASCS/CCC, Debtor was to potentially receive $14,086.00 and $2,498.51 in December, 1988, and will potentially be eligible to receive $1,232.60 in July, 1989.

On July 11, 1988, Debtors filed their petition seeking relief under Chapter 12 of the Bankruptcy Code. As enumerated above, subsequent to filing for bankruptcy protection Debtor may have become entitled to receive a series of payments, totalling up to $36,869.34 through December 31, 1988, pursuant to the Agreements (hereinafter collectively referred to as the "CCC Payments"). Counsel for FmHA stipulated at the hearing on this matter that FmHA seeks only to offset the CCC Payments scheduled for potential disbursement in 1988. Therefore, the future payments of $2,825.82 to which Debtor may become entitled in 1989 are not at issue in this proceeding.

### III. APPLICABLE LAW

FmHA seeks to offset the CCC Payments against the Indebtedness under 11 U.S.C.A. § 553. The relevant portion of that section provides:

"Except as otherwise provided in this section and in sections 362 and 363 ... this title [11 USCS §§ 101 et seq.] does not affect any right of a creditor to offset a mutual debt owing by such creditor

to the debtor that arose before the commencement of the case under this title ... against a claim of such creditor against the debtor that arose before the commencement of the case...."

11 U.S.C.A. § 553(a) (West 1979). Section 553 sets forth certain requirements which must be met before a setoff can be made. However, because § 553 does not independently authorize setoffs, where setoff of a debt under Title 11 is sought the creditor "must establish a claim and a setoff right cognizable under state or federal law." *In re Hazelton*, 85 B.R. 400, 403 (Bankr.E.D. Mich.1988) (citations omitted).

### A. Establishment of Independent Right of Setoff

To establish such right, FmHA relies upon regulations promulgated by the Secretary of Agriculture pursuant to 5 U.S.C.A. § 301 (West 1979 & Supp.1988), and set forth at 7 C.F.R. §§ 13.1, 13.4–13.7 & 13.9 (1988).[2] FmHA's Brief at 4–6. These regulations have previously sufficed to establish FmHA's right of setoff. *Hazelton*, 85 B.R. at 403.

Debtors question the validity of the cited regulations, asserting they are inconsistent with the statute authorizing their promulgation, and contrary to Congress' intent to preserve the family farm system. Debtors' Brief at 5–6. In the absence of authority that this Court is the proper forum in which to raise the issue of validity of an administrative regulation, and none was furnished by the parties, this Court is of the opinion that the regulations constitute federal law sufficient to establish FmHA's right of setoff.

■ Notwithstanding FmHA's right of setoff pursuant to federal regulations, Debtors point out that § 13.4(a) allows FmHA to defer, subordinate or withdraw its request for setoff where a determination has been made that the agency's best

---

**2.** These regulations allow, upon satisfaction of certain conditions, setoff of "amounts approved by Agricultural Stabilization and Conservation county committees for disbursement to [pro-

gram participants] ... against debts of such [participants] owing to any department or agency of the United States." 7 C.F.R. § 13.1.

interests would be served by such action. Debtors' Brief at 4. A convincing argument is made by Debtors that it is in the best interests of the Department of Agriculture to administer its programs in such a way as to foster Congress' intent not to subject family farm operations to unfair economic disadvantage. *Id.* at 4–5.

However, FmHA has not offered to defer, subordinate or withdraw its request for setoff pursuant to § 13.4(a). Section 13.4(a) appears to be permissive rather than mandatory,[3] and the Court is unwilling to require FmHA to take any such action with regard to its request for setoff.

B. Elements of 11 U.S.C.A. § 553

■ Once an independent right of setoff has been established, the three elements set forth in § 553 must be satisfied before a setoff can be effected against a debtor's obligation. First, a debt must be owed by the creditor to the debtor, which debt must have arisen before the debtor commenced his bankruptcy proceeding. Second, the creditor must have a claim against the debtor, which claim must also have arisen before the bankruptcy case was commenced. Last, the obligations must be mutual. These requirements, as well as other related matters, are considered separately below.

1. *Pre–Petition Debt Owed by Creditor to Debtor*

The first requirement of § 553 is that a debt must be owed by FmHA to Debtors, and the debt must have arisen before July 11, 1988, the date Debtors filed their Chapter 12 petition. There is no dispute among the parties that ASCS/CCC may owe a presently undetermined amount of money to Debtor. The disputes arise regarding whether FmHA and ASCS/CCC are the

same entity for setoff purposes,[4] and whether the debt arose before commencement of Debtors' bankruptcy proceeding.

FmHA relies primarily upon *Moratzka v. United States Agric. Stabilization and Conservation Serv. (In re Matthieson)*, 63 B.R. 56 (D.Minn.1986) and *Greseth v. Federal Land Bank (In re Greseth)*, 78 B.R. 936 (D.Minn.1987) to support its contention that the ASCS/CCC monies potentially due Debtor are pre-petition in nature. *Matthieson* is a Chapter 7 case holding the ASCS contract requirements to be contractual duties and promises rather than conditions precedent to payment, thus pre-petition obligations.[5] 63 B.R. at 60. The *Greseth* court followed the *Matthieson* court's holding, even though urged to distinguish the Chapter 12 debtors' ten-year commitment to ASCS from the alleged lesser duties owed by the *Matthieson* debtors. 78 B.R. at 942.

The cases of *Brooks Farms v. United States Dept. of Agric. (In re Brooks Farms*, 70 B.R. 368 (Bankr.E.D.Wisc.1987) and *In re Woloschak Farms*, 74 B.R. 261 (Bankr.N.D.Ohio 1987), are cited as supporting the finding in *Matthieson*. However, while *Brooks Farms* and *Woloschak Farms* may have allowed offset of ASCS/CCC entitlement payments, neither case is directly on point with *Matthieson*, nor with the facts before this Court.

In *Brooks Farms*, all contract requirements had been fulfilled prior to the debtor's bankruptcy filing, clearly establishing that the agency's debt to debtor arose pre-petition, 70 B.R. at 371. The *Woloschak Farms* case involved disaster relief payments for which final approval of the debtor's claim had been obtained before debtor filed its bankruptcy petition. 74 B.R. at 264. Thus, the debtor's *right* to receive

---

3. That section provides "[i]n case of indebtedness subject to setoff ... the head of any creditor agency of the Department of Agriculture ... *may* ... defer or subordinate in whole or in part, the right of the creditor agency to recover through setoff ... or *may* withdraw a request for setoff, if he determines that such action is in the best interest of ... such creditor agency ..." 7 C.F.R. § 13.4(a) (emphasis added).

4. *See infra* pp. 412–13, where this issue is separately addressed.

5. The ASCS contract required debtor to satisfy certain set-aside requirements, maintain soil conservation practices, and file compliance reports. 63 B.R. at 58.

the payments arose before the case was commenced, even though actual payment occurred after the filing. *Id.* FmHA's reliance on *Brooks Farms* and *Woloschak Farms* to support the *Matthieson* finding appears to be misplaced.

In urging this Court to find the CCC Payments to be post-petition in nature, Debtors rely upon *Hill v. Farmers Home Admin. (In re Hill),* 19 B.R. 375 (Bankr.N.D.Tex.1982), and *Walat Farms, Inc. v. United States ex rel. U.S. Dept. of Agric. (In re Walat Farms, Inc.),* 69 B.R. 529 (Bankr.E.D.Mich.1987). Although *Hill,* which held ASCS payments to be post-petition, has apparently been overruled *sub silento* in *In re Buske,* 75 B.R. 213 (Bankr. N.D.Tex.1987), *Walat Farms* does provide support for Debtors' argument that the payments at issue are post-petition.

The agreement between Walat Farms, Inc., and CCC was characterized as executory because a number of the duties required by the agreement were substantially unperformed at the time that debtor filed its Chapter 11 petition.[6] 69 B.R. at 531. Pursuant to 11 U.S.C.A. §§ 365(a) & (d)(2), prior to confirmation and subject to court approval, such an executory contract could be assumed or rejected by a Chapter 11 debtor-in-possession. *Id.* at 534. Upon assumption of the contract CCC would then owe the debt which arose under the contract to the debtor-in-possession, rather than the pre-petition debtor. *Id.* Under this analysis, the debtor's right to any payment from CCC could only arise post-petition, upon proper assumption and performance of the contract by the debtor-in-possession. *Id.* Section 553's requirement of a pre-petition debt owed by the creditor to the debtor would thus not be met. *Id.*

The *Matthieson* holding was distinguished by the *Walat Farms* court. The basis for the distinction was that *Matthieson* was a Chapter 7 case and did not address executory contracts in a reorganization context. *Id.* at 531–32.

The Court's research revealed a recent case adopting the *Walat Farms* rationale. *In re Fryar,* 93 B.R. 101 (Bankr.W.D.Tex. 1988). Pursuant to contracts between Mr. Neil and ASCS/CCC, at the time Neil filed his bankruptcy petition certain farming practices remained to be implemented and benefits were potentially owed him by ASCS/CCC. *Id.* at 103 (citation omitted). Thus, the contracts involved therein were characterized as executory in nature. *Id.* (citing *Walat Farms,* 69 B.R. 529). The *Fryar* court then reasoned that the ASCS/CCC debt owed Neil was contingent on his assumption and performance of the contracts through the end of the contract period. *Id.* at 103–04. Further, such assumption of the contracts and completion of performance would cause the right to payment to inure to the debtor-in-possession, not the pre-petition debtor. *Id.* at 104. As in *Walat Farms,* the debtor's right to payment would therefore accrue post-petition and thus not be subject to setoff against a pre-petition debt under § 553. *Id.* The *Matthieson* case was discussed and distinguished because it appeared to involve a situation in which ASCS/CCC's liability to the debtor was fixed pre-petition, rather than contingent at the time of filing for bankruptcy, and because it did not address the executory nature of the ASCS/CCC contracts. *Id.*

■ This Court is persuaded by the reasoning of the *Walat Farms* and *Fryar* courts. Where substantial performance remains due under ASCS/CCC contracts, and ASCS/CCC is obligated to make payment only upon completion of performance, such contracts are executory in nature. Upon the debtor-in-possession's assumption of such executory contracts, they become post-petition contracts of the estate. Payments arising under these post-petition contracts do not constitute pre-petition debts

---

6. In the event of debtor's failure to perform those duties, the contract provided CCC with damage remedies including the right to withhold payments, the right to require debtor to refund payments previously received, and the right to require debtor to pay liquidated damages. 69 B.R. at 531.

of the creditor, thus cannot be offset against a debtor's pre-petition debts pursuant to § 553.

### 2. Pre-petition Debt Owed by Debtors to Creditor

Section 553's second requirement is that FmHA must have a claim against Debtors which arose before their bankruptcy filing. FmHA's claim against Debtors is not at issue, nor is there any objection to the assertion that the claim arose before Debtors filed their bankruptcy petition. All parties agree that Debtors borrowed money from FmHA, and that when Debtors' bankruptcy petition was filed on July 11, 1988, the Indebtedness amounted to $257,687.37. Therefore, the requirement that FmHA have a pre-petition claim against Debtors is satisfied.

### 3. Mutuality of Obligations

Finally, § 553 requires "a mutual debt owing by such creditor to the debtor ... and a claim of such creditor against the debtor...." 11 U.S.C.A. § 553(a). The Bankruptcy Code does not define "mutual debt," therefore other authority must be consulted. Collier's treatise provides "[t]o be mutual, the debts must be in the same right and between the same parties standing in the same capacity." 4 Collier on Bankruptcy, ¶ 553.04[2] (15th ed. 1988); see also In re Rinehart, 76 B.R. 746, 750 (Bankr.D.S.D.1987). This requirement is to be strictly construed. 4 Collier on Bankruptcy, ¶ 553.04[1] (15th ed. 1988); see also In re Rinehart, 76 B.R. 746, 750 (Bankr.D.S.D.1987).

### a. Are FmHA and ASCS/CCC the same entity for setoff purposes?

This question arises because it is not readily apparent that FmHA, the entity holding a claim against Debtors, is the same as ASCS/CCC, the entity from which Debtors will potentially be eligible to receive money. The first question to be resolved in establishing mutuality of the obligations at issue is whether FmHA and ASCS/CCC stand in the same capacity vis-a-vis Debtors for setoff purposes.

Numerous decisions are cited to support FmHA's claim that FmHA and ASCS/CCC are the same parties for setoff purposes.[7] Trustee points out, quite correctly, that not all of the cases cited by FmHA deal directly with this issue.[8]

Courts squarely addressing the issue and finding the requisite identity of capacity between FmHA and ASCS/CCC for setoff purposes have based their decisions on various authorities. In Waldron v. Farmers Home Admin., the Supreme Court case of Cherry Cotton Mills v. United States, 327 U.S. 536, 539, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946), is cited for the proposition that "[a]gencies of the United States government may make setoffs to collect debts owed to other United States agencies." 75 B.R. 25, 27 (N.D.Tex.1987); see also In re Thomas, 84 B.R. at 440 (N.D.Tex.1988).

Another source of authority for such finding was recognized in In re Ratliff, 79 B.R. 930 (D.Colo.1987). The Ratliff court found FmHA's right to offset ASCS/CCC payments within the regulations set forth at 7 C.F.R. § 13.4. Id. at 933. These regulations essentially provide that "payments due from CCC must be setoff against any other debt owed by the recipient to any agency of the Department of Agriculture." Id.

Debtors, Trustee and the Amicus contend that FmHA and CCC do not stand in the same capacity as is necessary for setoff.[9] Supporting this contention, the Butz

---

7. The cases cited by FmHA to support this contention are United States ex rel. Farmers Home Admin. v. Parrish (In re Parrish), 75 B.R. 14 (N.D.Tex.1987); Waldron v. Farmers Home Admin., 75 B.R. 25 (N.D.Tex.1987); Buske v. McDonald (In re Buske), 75 B.R. 213 (Bankr.N.D.Tex.1987); Pinkert v. Farmers Home Admin. (In re Pinkert), 75 B.R. 218 (Bankr.N.D.Tex.1987); In re Ratliff, 79 B.R. 930 (Bankr.D.Colo.1987);

and In re Thomas, 84 B.R. 438 (Bankr.N.D.Tex. 1988).

8. See e.g. Parrish, 75 B.R. at 15; Buske, 75 B.R. at 216; and Pinkert, 75 B.R. at 220. In each of these cases, the debtors conceded that FmHA and ASCS/CCC are the same entity.

9. Cases cited by Debtors, Trustee and the Amicus are In re Butz, 86 B.R. 595 (Bankr.S.D.Iowa

court held FmHA and ASCS were not "mutual" entities because of the differences in their missions, staffs, administrators and budgets. *In re Butz,* 86 B.R. 595, 602 (Bankr.S.D.Iowa 1988). However, no authority was cited for this conclusion. *Id.* at 602.

*Brooks Farms* involved the question of setoff of CCC's claim against debt owed CCC. 70 B.R. at 369. Thus, the question presented herein was not addressed in that case. Nor was the instant question before the *Braniff Airways* court, or the *Brendern Enterprises* court. *In re Braniff Airways, Inc.,* 42 B.R. 443 (Bankr.N.D.Tex. 1984); *Brendern Enters., Inc. v. Micro–Acoustics Corp. (In re Brendern Enters., Inc.),* 12 B.R. 458 (Bankr.E.D.Pa.1981). In both those cases, the necessity for identity of capacity was set forth, but its existence between FmHA and ASCS/CCC was not at issue. 42 B.R. at 443; 12 B.R. at 458.

One of the cited cases, *In re Rinehart,* 76 B.R. 746 (D.S.D.1987), was appealed. Upon appeal, the district court examined the decision of the *Thomas* court, the *Cherry Cotton Mills* case, and the regulations set forth at 7 C.F.R. § 13.4. *United States ex rel. Small Bus. Admin. v. Rinehart,* 88 B.R. 1014, 1016–17 (D.S.D.1988). Ultimately, the district court disagreed with the bankruptcy court and found that federal agencies are the same entities for setoff purposes. *Id.* at 1016.

■ The weight of authority appears to allow setoff among the various agencies of the Department of Agriculture. In light of the foregoing, this Court is persuaded that FmHA and ASCS/CCC stand in the same shoes for § 553 setoff purposes.

b. Are the pre-petition debtor and debtor-in-possession the same entity for setoff purposes?

In attempting to establish mutuality of obligations a second problem arises be-

cause upon the filing of a Chapter 12 bankruptcy petition, the pre-petition debtor becomes a post-petition debtor-in-possession. The issue then becomes whether this change in capacity upon the filing of the Chapter 12 petition is such as to destroy the mutuality of the obligations. This question was discussed in *Walat Farms.* 69 B.R. at 530.

Before filing its bankruptcy petition, Walat Farms, Inc., acquired loans from CCC secured by liens on certain crops. *Id.* at 529. Subsequently, but also prior to the filing, the debtor contracted to participate in one of CCC's programs. *Id.* When faced with the question of CCC's right to setoff the payments due debtor against the debt owed CCC by debtor, the court had to determine whether the pre-petition Walat Farms entity that owed money to CCC was the same as the post-petition debtor-in-possession Walat Farms entity holding a claim against that agency. *Id.* at 530.

The debt due CCC was clearly a pre-petition obligation owed by the pre-petition debtor. However, the CCC agreement involved therein was found to be executory in nature, thus had to be assumed and performed by the debtor-in-possession in order for a right to the CCC deficiency payment to arise. *Id.* at 531. The court stated that upon proper assumption and performance of the contract, the right to the deficiency payment would necessarily arise post-petition and CCC would then be obligated to pay the debtor-in-possession, not the pre-petition debtor. *Id.* at 534. Under these circumstances, the *Walat Farms* court would not permit setoff because "the post-petition ... debtor in possession is a different entity from the pre-petition debtor." *Id.* at 530 (quoting 4 *Collier on Bankruptcy* ¶ 553.08 (15th ed. 1986); *see also Fryar,* at 104.

■ The analysis in the *Walat Farms* case is well-reasoned. This Court agrees

1988); *In re Rinehart,* 76 B.R. 746 (Bankr.D.S.D. 1987); *Brooks Farms v. United States Dept. of Agric. (In re Brooks Farms),* 70 B.R. 368 (Bankr. E.D.Wisc.); *In re Braniff Airways, Inc.,* 42 B.R.

443 (Bankr.N.D.Tex.1984); and *Brendern Enters., Inc. v. Micro–Acoustics Corp. (In re Brendern Enters., Inc.),* 12 B.R. 458 (Bankr.E.D.Pa. 1981).

that where a debtor-in-possession assumes an executory contract, any right to benefits under such contract will accrue post-petition to the debtor-in-possession rather than to the pre-petition debtor. A post-petition debtor-in-possession does not stand in the same shoes as a pre-petition debtor for setoff purposes.

## C. Applicability of Section 362

■ FmHA's right to offset mutual debts pursuant to § 553 is expressly made subject to § 362, which provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of ... the setoff of any debt owing to the debtor that arose before the commencement of the case...." 11 U.S.C.A. § 362(a)(7) (West 1979 & Supp.1988). Therefore, prior to exercising its § 553 right of setoff, relief from the automatic stay must be sought and obtained by a creditor.[10] *United States ex rel. I.R.S. v. Norton*, 717 F.2d 767, 771 (3rd Cir.1983). Accordingly, even if FmHA establishes the existence of all elements of § 553, before relief from the automatic stay in this case can be granted either cause must be shown by FmHA, *or* the Court must be persuaded that Debtors have no equity in the CCC Payments and that the payments are not necessary for Debtors to effectively reorganize. §§ 362(d)(1) & (2).

■ While some courts hold that only a showing of "cause" is necessary to terminate the automatic stay in reorganization cases, *see e.g. Roosevelt Savs. Bank v. Branch (In re Branch)*, 10 B.R. 227, 229 (Bankr.E.D.N.Y.1981) (citations omitted), others hold that § 362(d)(2) must be applied in a reorganization case. *See e.g. Dale Funding Corp. v. Garner (In re Garner)*,

18 B.R. 369, 371 (S.D.N.Y.1982).[11] This Court is of the opinion that, absent special circumstances, relief from the automatic stay should be granted upon establishment of either component of § 362(d).

## D. Equitable Discretion of the Bankruptcy Court

■ Finally, according to § 553, setoff is not mandatory. *United States ex rel. S.B.A. v. Rinehart*, 88 B.R. 1014, 1018 (D.S.D.1988) (citations omitted). When faced with a creditor's motion seeking relief from the automatic stay to effect an administrative offset, the bankruptcy court's equitable discretion may come into play. *Id.* The court may disallow a setoff if its effects will be inconsistent with the Bankruptcy Code. *Id.; see Bohack Corp. v. Borden, Inc. (In re Bohack Corp.)*, 599 F.2d 1160, 1165 (2nd Cir.1979); *see also In re Hazelton*, 85 B.R. 400, 405 (Bankr.E.D. Mich.1988). Setoff of CCC payments against FmHA debt has been denied previously in bankruptcy on equitable grounds "because allowing the setoff is inconsistent with the purposes of Chapter 12 and the rehabilitation of American farmers." 88 B.R. at 1018 (quoting *In re Hazelton*, 85 B.R. at 405).

Debtors, Trustee, and the Amicus attempted to persuade the Court to invoke its equitable discretion to disallow the requested offsets on policy grounds. In this Court's opinion, its equitable discretion should come into play only on those rare occasions when justice cannot be achieved by any other means. This case does not present such an occasion.

## IV. DISCUSSION

■ In this reorganization case, Debtor entered into the six CCC Agreements prior

---

**10.** Relief from the stay may be requested by a party in interest, and the court shall grant such relief "(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or (2) with respect to a stay of an act against property under subsection (a) of this section, if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorga-

nization." 11 U.S.C.A. § 362(d) (West Supp. 1988).

**11.** In a chapter 11 context, it has been held that "[s]etoff is permissible ... only where it does not undermine the debtor's ability to reorganize." *Paris v. Transamerica Ins. Group (In re Buckley & Assocs., Inc., Inc.)*, 78 B.R. 155, 158 (E.D.Tenn.1987) (citations omitted).

to filing for bankruptcy protection. All the Agreements, except for Agreement # 1, appear to be analogous to the contracts involved in *Walat Farms*.

### A.   Agreement # 1

The nature of the CCC Payment owed Debtor pursuant to Agreement # 1 is not explained in any of the pleadings submitted by the parties. The Court has examined Agreement # 1 and determined it to be a Note and Security Agreement which permits satisfaction by payment or by delivery of a quantity of a specified commodity having a settlement value equal to the outstanding balance of the loan. It is the understanding of the Court that at the time Debtor delivered the commodity to CCC to satisfy this debt, the settlement value of the commodity exceeded the amount due on the note.[12]

Apparently this "overpayment" by Debtor was discovered by CCC several days after its occurrence. CCC then scheduled disbursal of the $1,142.85 difference for July 20, 1988. As the amount of this payment due Debtor from ASCS/CCC was fixed in 1986, well before Debtors filed their bankruptcy petition, it is clearly a pre-petition claim.

### B.   Agreement # 2

Pursuant to Agreement # 2, as of February 26, 1987, Debtor agreed to place a certain acreage into the Conservation Reserve Program for ten years. Debtor is required to carry out the terms and conditions of the contract by *inter alia* implementing a conservation plan, establishing temporary vegetative cover as CCC determines to be necessary, maintaining vegetative cover and taking other actions to reduce erosion, not allowing grazing, harvesting, or commercial use upon the land, and complying with noxious weed laws. Furthermore, Debtor is to take no action to defeat the purpose of the contract, and must file an annual form listing all crops and land uses on the farm.

At the time Debtor filed for bankruptcy protection, this contract had only been in effect slightly over one year and four months. That means eight years and eight months of the contractual duties remain to be performed post-petition.

In return for Debtor's continued performance of the above requirements, CCC is to make annual rental payments to him. These rental payments are contingent upon his performance and are expressly made subject to availability of funds. Apparently only one of the annual rental payments had been made prior to Debtors' bankruptcy filing, leaving Debtor the possibility of receiving nine post-petition annual payments.

In the event Debtor breaches any of the contract terms, the contract may be terminated by CCC. Upon termination, Debtor must forfeit all right to payment, refund any previous payments received, and pay liquidated damages to CCC.

### C.   Agreements # 3–# 6

Agreements # 3–# 6 are all Contracts to Participate in the 1988 Price Support and Production Adjustment Programs. These contracts provide that Debtor must limit the acreage planted with crops, devote acreage to approved conservation uses, protect designated land from weeds, insects, rodents, and wind and water erosion by using certain approved covers or conservation practices through December 31, 1988, and not allow grazing or mechanical harvesting on the designated land. Debtor must also file a specified form listing all crops and land uses on the farm. As of the date the bankruptcy petition was filed, approximately six months' performance had been rendered under these contracts, and approximately six months remained in which Debtor was bound to comply with the terms of these contracts.

Full compliance with the requirements of these contracts will entitle Debtor to deficiency and/or diversion payments as computed and announced by CCC. Upon Debt-

---

**12.**  Counsel for Debtors confirmed that the commodity was delivered on or before May 31, 1986, the date payment or delivery of the collateral commodity was due.

or's failure to comply with the terms and conditions of the contract, CCC has the right to declare him ineligible for any benefits under the contract, may require a refund of any advance or final payment, and may require payment of liquidated damages.

In summary, Agreements # 2–# 6 are executory. Therefore, neither the pre-petition Debtor nor ASCS/CCC will have any rights or duties under the contracts unless, prior to confirmation, debtor-in-possession expressly assumes them. Provisions for the timely assumption Agreements # 2–# 6 are contained within Debtors' plan of reorganization, thus satisfying the Court that the debtor-in-possession intends to assume and complete performance of these contracts.

Assumption of these Agreements, as provided in the plan, and completion of the substantial remaining performance thereunder will give debtor-in-possession rights to the deficiency payments under the contracts. These rights will arise post-petition and ASCS/CCC will be obligated to pay the debtor-in-possession, not the pre-petition debtor. Thus, setoff will not be permitted because debtor-in-possession's post-petition claims against FmHA cannot be offset against the pre-petition Indebtedness due FmHA.

### D. Section 362(d)

■ It appears that as to the CCC Payment due under Agreement # 1, all requirements of § 553 are fulfilled. Thus, the question of relief from the automatic stay must be discussed.

FmHA asserts that cause exists for this Court to grant such relief, and presented testimony at the hearing regarding the inadequacy of protection offered it under Debtors' plan. According to FmHA's evidence, the plan proposes to pay a prorata share of Debtors' disposable income toward the Indebtedness, which amount is claimed to be insufficient in light of the approximately $260,000.00 owed FmHA by Debtors. FmHA's assertion of lack of adequate protection is undisputed. Therefore, the Court finds cause exists for purposes of granting relief from the automatic stay as to the CCC Payment owed Debtor pursuant to Agreement # 1.

## V. DECISION

Federal law clearly establishes FmHA's independent right of setoff. Therefore, FmHA is authorized to seek setoff under § 553 of monies due Debtor against the Indebtedness.

As to the CCC Payment due Debtor pursuant to Agreement # 1, all elements of § 553 are satisfied. All parties agree the Indebtedness constitutes FmHA's pre-petition claim against Debtors, which amounted to $257,687.37 as of July 11, 1988. It is undisputed that the ASCS/CCC payment of $1,142.82 arose pre-petition and is owed the pre-petition debtor. The Court concludes that, for setoff purposes, the requisite identity of capacity exists between FmHA and ASCS/CCC.

Further, the Court finds Debtors' plan does not provide adequate protection for FmHA's interest. Therefore, relief from the automatic stay is hereby granted to allow FmHA to offset the $1,142.82 CCC Payment due Debtor under Agreement # 1 against the Indebtedness owed FmHA by Debtors.

Regarding the CCC Payments potentially due Debtor pursuant to Agreements # 2–# 6, all elements of § 553 are not satisfied. The sole element met is that of a pre-petition claim by Creditor against Debtors. As above, the parties agree the Indebtedness comprises such claim.

The requirement that Debtor's claim against ASCS/CCC must have arisen pre-petition is not met. The Court finds Agreements # 2–# 6 to be executory in nature. Thus, upon debtor-in-possession's assumption and performance thereof as provided in his plan, the right to the CCC Payments potentially due will arise post-petition and be payable to debtor-in-possession, not the original contracting pre-petition debtor.

Finally, as to the requirement of mutuality of obligations, FmHA and ASCS/CCC

occupy the same role for § 553 setoff purposes. However, the pre-petition debtor and the post-petition debtor-in-possession are not the same entity for such purposes. Thus, the requisite mutual debt is lacking.

Based upon the foregoing, FmHA's Motion is denied insofar as it seeks relief from the automatic stay to offset the CCC Payments potentially due under Agreements # 2–# 6.

IT IS SO ORDERED.