**In re Julio C. BANDERAS, Debtor.**

**Julio C. Banderas, Plaintiff,**

v.

**Alexander N. Doman, M.D., Defendant.**

**Bankruptcy No. 97–16392–9P7.**
**Adversary No. 98–182.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

June 2, 1999.

Louis Amato, Naples, FL, for Plaintiff.

Theodore N. Stapleton, Atlanta, GA, Mark Hildreth, Sarasota, FL, for Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS MAY be the last round of a seemingly never ending feud between Julio C. Banderas (Debtor) and Alexander N. Doman, M.D. (Dr. Doman), former profes-sional associates, which spawned numerous ongoing litigations between the parties over the years. One of the litigations terminated with the entry of a Final Judgment by the Superior Court of Clayton County, Georgia, against the Debtor and in favor of Dr. Doman in the amount of $830,-500 (Final Judgment) which Dr. Doman so far has not been able to collect. However, like Inspector Javert in Les Miserables pursuing Jean Valjean, Dr. Doman never gave up the hunt, even when the Debtor sought refuge in this Court by filing his Petition for Relief under Chapter 7 of the Bankruptcy Code.

The matter before this Court is the Debtor's two-count Complaint filed against his arch nemesis, Dr. Doman, on August 6, 1998. In Count I of the Complaint, the Debtor sought damages for an alleged intentional violation of the automatic stay by Dr. Doman. In Count II of the Complaint, the Debtor sought a temporary and permanent injunction prohibiting Dr. Doman from violating the automatic stay in the future. In due course, Dr. Doman filed his Answer and an amended Answer asserting affirmative defenses. On March 17, 1999, the Debtor sought leave to amend the Complaint to allege additional violations by Dr. Doman, which Motion was granted with the entry of an Order on March 26, 1999.

At the duly scheduled final evidentiary hearing, the following facts have been established, based on the record and the stipulation of the parties, facts which are admittedly true and relevant to the claims asserted by the Debtor in his Complaint:

On September 5, 1995, Dr. Doman obtained a final judgment against the Debtor and others in the amount of $832,447.62 with interest at 12% in the Superior Court of Clayton County Georgia. (Judgment) (Pre-Trial Stip., Exh. B). Dr. Doman attempted to collect on the Judgment, albeit without success. The Debtor ultimately moved to Florida and on October 12, 1997, filed his voluntary Petition for relief under Chapter 7 of the Bankruptcy Code. In due

course, Diane Jensen was appointed Trustee and placed in charge of the administration of the Debtor's estate.

On November 14, 1997, the Trustee filed her Report and Notice of Intention to Abandon Property of the Estate. (Pre-Trial Stip., Exh. A). On December 9, 1997, Theodore Stapleton (Stapleton), a practicing attorney in the State of Georgia, filed a Motion and sought relief from the automatic stay in order to proceed against certain real property known as "Fair Oaks," located in Clayton County, Georgia.

Unfortunately, both the Trustee's Report and Notice of Intention to Abandon and the Motion for Relief from Stay incorrectly described the Fair Oaks property. The incorrect legal description was the result of utilizing the legal description which appeared both on a Deed to Secure Debt executed by the Debtor and his non-debtor spouse to Dr. Doman on March 11, 1996; and in a Supersedeas Order entered by the Georgia State Court on February 1, 1996.

Sometime after the entry of the Order which granted the Motion to Lift the Stay, on March 3, 1996, Mr. Stapleton, having learned about the incorrect legal description, wrote to counsel for the Debtor advising him of the error. (Exh. E). On March 19, 1998, Mr. Stapleton filed a Motion for Contempt against the Debtor on behalf of Dr. Doman in Clayton County, Georgia. (Exh. F). In his Motion, Stapleton alleged that as a result of the improper legal description of the Fair Oaks property, Dr. Doman incurred additional expenses in connection with his attempt to foreclose the Security Deed and was prevented from liquidating his collateral. The alleged contemptuous conduct was the claim that the Debtor and his wife refused to execute a deed reflecting the correct legal description. Stapleton sought assessment of costs of the second foreclosure and an order directing the Debtor and Ms. Banderas to execute a corrected deed. There was no allegation in the Motion that Stapleton was authorized by the Bankruptcy Court to seek in personam relief against the Debtor. On March 25, 1998, Stapleton submitted a proposed order with a cover letter to the Judge of the Superior Court of Clayton County, requesting the ex parte entry of the order. The order submitted reflected the correct legal description of the Fair Oaks property and ordered the Debtor and his wife to execute all documentation to convey the property to Dr. Doman. Stapleton did not seek and the Order did not provide an award of costs against the Debtor. (Stip.Exh. G).

On March 25, 1998, Stapleton filed an Amended Motion for Contempt (Stip.Exh. H) and a Second Amended Motion for Contempt (Stip.Exh. I). In both Motions, Stapleton sought a judgment for costs against Ms. Banderas for her alleged willful refusal to execute a corrective deed to reflect the correct legal description of the Fair Oaks property. In the Second Amended Motion, Stapleton clarified that he is not seeking any affirmative relief against the Debtor but only against Ms. Banderas for an alleged fraud committed by her by furnishing an inaccurate legal description of the property. On April 14, Stapleton filed a Motion to Amend the order lifting the automatic stay entered on December 16, 1997, seeking to amend the Order Lifting Stay to reflect the correct legal description of the property. The Motion was granted on March 11, 1998. (Stip.Exh. J).

It is without dispute that Stapleton did not obtain leave from this Court to file the Motions for Contempt. The first Motion for Contempt might have been a technical violation of the automatic stay because the monetary relief was sought against the Debtor. The Second Motion, however, clarified that the monetary relief was not sought against the Debtor but only against Ms. Banderas, a non-debtor who, of course, is not afforded the protection granted to debtors by § 362(a) of the Bankruptcy Code.

In addition to the foregoing, there are two additional legal proceedings which, according to the Debtor, violated the automatic stay. The first was the issuance and service of a Writ of Garnishment by Stapleton. The Writ was served on Mr. and Mrs. Walter Estes, tenants of real property located in Athens, Clark County, Georgia. The property was owned by the Debtor and his wife but was subject to the judgment lien and the Deed Securing Debt. (Stip.Exh. D). Although the record is not clear, this property was also abandoned by the Trustee, although the order granting relief from the automatic stay only referred to the Fair Oaks property (Stip.Exh. E) and not against the Athens property. There are also two letters from Stapleton addressed to the Debtor (Exh. 1), one dated January 29, 1998 and the second dated June 3, 1998. In the January 29, 1998 letter entitled, "Notice of Foreclosure," Dr. Doman advised the Debtor that the foreclosure sale is now scheduled for March 1, 1998; that all expenses of Dr. Doman in accordance with the terms and conditions of the Security Deed will be added to the outstanding principal indebtedness and shall bear interest at the delinquency rate specified in the Security Deed, along with attorney fees. The letter also informed the Debtor that unless the Debtor pays the amount due under the security deed of $832,447.62, plus interest and costs within 10 days, the Debtor will be liable for additional attorney fees based on Georgia Statute OCGA 13–11–1, as amended.

The second letter dated June 3, 1998 is entitled, "Notice of Foreclosure of 2500 Fair Oaks Drive." In this letter, Mr. Stapleton informed the Debtor with basically the same language as in the first one that unless the amount stated in the letter is paid within 10 days, he will be liable for additional attorney fees.

The second proceeding involved an action taken by one Mr. Webb, attorney for Dr. Doman, in a suit filed by the Debtor against Dr. Doman in the State Court in Georgia. The Debtor prevailed in his suit at the trial level by obtaining a Summary Judgment against Dr. Doman. The Judgment was affirmed by the Georgia Court of Appeals. On March 26, 1998, Mr. Webb filed a Petition for Certiorari in the Georgia Supreme Court. Mr. Webb did not seek relief from the automatic stay in order to obtain leave from this Court to file the Petition.

## LIABILITY OF DR. DOMAN

The fact that the sanctions are sought by the Debtor against Dr. Doman and not against Mr. Stapleton and Mr. Webb immediately raised the issue of the legal significance of the Debtor's failure to proceed against Mr. Stapleton and Mr. Webb or at least to join them in this litigation as indispensable parties pursuant to Fed. R.Civ.Pro. 19 as adopted by Fed.R.Bankr. Pro. 7019. This fact did not escape counsel representing Dr. Doman in this litigation, who contends that if there was a violation of the automatic stay which was willful and thus sanctionable pursuant to § 362(h), there is nothing alleged in the Complaint and there is no proof in this record that either Dr. Doman personally violated the automatic stay or the violations occurred at his direction or with his consent and acquiescence.

The alleged violations were (1) the contempt proceedings instituted by Mr. Stapleton in the Superior Court of Clayton County, Georgia; (2) two letters written by Mr. Stapleton and sent to the Debtor; (3) the procurement of a Writ of Garnishment by Stapleton and served on Mr. and Mrs. Estes, the tenants of property owned by the Debtor equally subject to the judgment lien of Dr. Doman; (4) the filing of a Petition for Certiorari by Mr. Webb in the libel action originally filed by Dr. Doman against the Debtor but which ended up with a judgment in favor of the Debtor and a dismissal of the suit by the trial court which judgment was affirmed by the Court of Appeals.

The liability of a client for actions by the attorney representing the client has been considered by several courts. In the case of *McArthur v. State*, 303 So.2d 359 (Fla.3rd DCA 1974), the Court held that the act of an attorney is binding on the client even though it is done without consulting with the client and even if the act taken was done against the wishes of the client. *McArthur*, 303 So.2d at 360, citing *State v. Earnest*, 265 So.2d 397, 400 (Fla.1st DCA 1972). Courts outside of Florida are in agreement with the proposition that an act taken by the attorney within the scope of his engagement is binding on the client in the absence of fraud. *State ex rel A.M.T. v. Weinstein*, 411 S.W.2d 267 (Mo.App.1967); *State v. Pinson*, 717 S.W.2d 266 (Mo.App.1986).

■ Based on the foregoing, it is beyond peradventure that the argument of counsel for Dr. Doman finds no support by controlling authorities. From this it follows that the actions undertaken by Mr. Stapleton and Mr. Webb are binding on Dr. Doman even in the absence of any evidence that Dr. Doman authorized or consented to the alleged violation of the automatic stay by Mr. Stapleton or Mr. Webb. This being the case, it is equally true that neither of them are indispensable parties to this action. This leads to the ultimate question of whether any of the acts charged against Mr. Stapleton or Mr. Webb should be sanctioned for a willful violation of the automatic stay.

■ Concluding that Dr. Doman's contention is without merit, leaves for consideration the additional contention that the Debtor has no standing to seek the imposition of sanctions for violation of the automatic stay by Mr. Stapleton and Mr. Webb because the Fair Oaks property was not properly abandoned by the Trustee. Thus, the property remained property of the estate and only the Trustee would have standing to seek sanctions for the violation of the automatic stay. This contention at most may be described as missing the point. It is quite evident that the alleged violation was not directed against the Fair Oaks property at all but by Mr. Stapleton's assertion of an in personam claim against the Debtor when this Court only authorized Mr. Stapleton to proceed in rem against the Fair Oaks property. It is clear from this record that the automatic stay remained in operation protecting the Debtor against any attempt to collect a prepetition in personam obligation of the Debtor, notwithstanding that the stay was removed vis-à-vis the subject property.

■ The right to invoke the protection of the automatic stay uniquely belongs to the Debtor and not to the Trustee. Thus, it is clear that the Debtor has standing to seek the relief sought in his Complaint. This leads to the consideration of the substantive claim of the Debtor which, in turn, calls for a determination of whether Mr. Stapleton willfully and knowingly violated the automatic stay and if so, what damages the Debtor suffered as a result of the violation. Of course, also remaining for consideration is whether Mr. Webb violated the automatic stay willfully and knowingly and what damages, if any, the Debtor suffered as a result of that alleged violation.

### CLAIM AGAINST DR. DOMAN FOR ACTS OF STAPLETON

■ It cannot be seriously disputed that Mr. Stapleton, who was at the relevant time, counsel of record and acting on behalf of Dr. Doman, knew of the pendency of the bankruptcy case. It is equally without dispute that he filed the first Motion for Contempt (Exh. F) in the Superior Court in Clayton County, Georgia. The record is equally clear, however, that the Debtor had an obligation to furnish a proper legal description of the Fair Oaks property when he executed a Deed securing the debt in lieu of posting a supersedeas bond in the Superior Court in Clayton County, Georgia. Dr. Doman had the absolute right to receive a deed with the correct legal description. It would have

been more appropriate and proper to seek an order from the Superior Court in Georgia compelling the Debtor to execute an amended Deed to Secure Debt, reflecting the correct legal description rather than proceed with contempt. The fact remains, however, that after this Court granted Dr. Doman's Motion to lift the stay and authorized Dr. Doman to proceed in rem against the subject property, Mr. Stapleton filed the first Motion for Contempt, seeking a monetary award against the Debtor.

It is quite evident from the foregoing that while clearly Stapleton filed the Motion, the Motion cannot be construed to be the type of willful violation of the automatic stay that would warrant the imposition of sanctions. It was technically a violation of the automatic stay, yet the Motion was basically consistent with the authorization granted by this Court to Dr. Doman to proceed in rem against the subject property. It is true that in the body of the Motion, Dr. Doman sought assessment of a penalty equal to the expenses to cover the advertising costs and to conduct a second foreclosure sale. He did seek in the wherefore clause assessment of costs of the second foreclosure sale, however, this was not a request to collect a prepetition debt but to sanction Dr. Doman for postpetition conduct which clearly is not within the scope of the protection of the automatic stay.

■ The next conduct claimed to be a violation by the Debtor is the Amended Motion for Contempt filed by Mr. Stapleton. (Exh. H). It appears that in this Amended Motion filed on March 3, 1999, Mr. Stapleton sought an expedited hearing and requested an award of attorneys fees against Debra Banderas, the Debtor's nondebtor spouse which, of course, clearly would not be a violation of the automatic stay. The next alleged violation of the automatic stay is the Second Amendment to the Motion for Contempt by Stapleton (Exh. I) filed on April 22, 1998. In this Motion, Mr. Stapleton stated that he seeks no affirmative relief against the Debtor or any interest of the Debtor in the subject property. Stapleton stated that he merely seeks a judgment against Debra Banderas for all costs and directing her to transfer her interest in the property charging that she committed fraud by furnishing an improper legal description on the subject property. It is evident from this exhibit that the action cannot be a violation of the automatic stay and in turn a basis to impose sanctions pursuant to § 362(h).

■ The next act which is alleged to be a violation is Mr. Stapleton's procurement of a Summons of Continuing Garnishment (Exh. K) which was served on Mr. and Mrs. Walter Estes, the tenants of the Athens property. The Petition for the Writ caused to be issued by Mr. Stapleton was accompanied by an Affidavit of Garnishment executed by Mr. Stapleton under oath in which he stated that he believed that the garnishee, that is Mr. Estes, was the employer of the Debtor. This was obviously a blatant falsehood and fabrication knowingly made by Mr. Stapleton since he was fully aware who the Debtor was, having been involved over the years with numerous litigations with the Debtor and knew that the Debtor was never employed by Mr. Estes. While this property was owned by the Debtor and upon filing it became property of the estate, the record is clear that the Trustee of the estate abandoned all interest in the Athens, Georgia property therefore the interest reverted back to the Debtor. It is further without dispute that Dr. Doman never obtained sequestration of any rents derived from the property and all rents paid by the tenants was property of the Debtor.

It is true that both letters could be construed as an attempt to assert in personam liability against the Debtor for additional attorney fees and thus, it might be a violation of the automatic stay. However, from a fair reading of the letters together with the fact that the additional attorney fees are triggered by a postpetition event and accrued postpetition pursuant to the terms of a valid secured claim, the letters

cannot be construed to be even a technical violation of the automatic stay let alone a willful violation which would warrant the imposition of sanctions.

While this Court is satisfied that the actions undertaken by Mr. Stapleton by filing the Motions for Contempt and sending the two letters may not be sufficient to warrant the imposition of sanctions, the same may not be said of the garnishment proceeding instituted by Mr. Stapleton. In executing the patently false Affidavit utilizing a totally inappropriate procedure to obtain funds which rightfully belonged to the Debtor, Mr. Stapleton blatantly violated the automatic stay. This act is more than sufficient to find a willful, knowing violation of the automatic stay and in turn impose sanctions in addition to ordering the refund of the monies obtained through the improper garnishment procedure.

### CONDUCT OF WEBB

■ Mr. Webb was counsel of record for Dr. Doman in the libel litigation commenced by Dr. Doman against the Debtor in the Georgia State Court. It is without dispute that after the Court of Appeals affirmed the trial court's granting of the summary judgment for the Debtor, Mr. Webb filed a petition for certiorari in the Georgia State Court. No doubt the filing was not inadvertence or oversight and the defense of Mr. Webb that he was "vaguely" familiar and "vaguely" aware of the pendency of the bankruptcy is unacceptable. Clearly, filing the Petition for Certiorari was a violation of the automatic stay. The Petition was filed in connection with the monetary claim of Dr. Doman against the Debtor based on libel and based on a prepetition transaction. The Petition was in pursuit of enforcing that claim. Thus, it is clear it falls squarely within the prohibition of § 362(a) of the Bankruptcy Code.

### DAMAGES/SANCTIONS SOUGHT

■ This leaves for consideration the claim of Dr. Doman that in the event sanctions are imposed against him, he is entitled to setoff his claim against the Debtor. Under § 553 of the Bankruptcy Code, a creditor's right to setoff is conditioned upon both debts having arisen prepetition. See In re Peterson Distributing, Inc., 82 F.3d 956 (10th Cir.1996). Moreover, Courts will not authorize a setoff if the setoff would be contrary to the policy behind the Bankruptcy Code or if its effects will be inconsistent with the Bankruptcy Code provisions. See In re Evatt, 112 B.R. 405 (Bankr.W.D.Okla.1989), affirmed 112 B.R. 417 (W.D.Ok.1990); In re Acequia, Inc., 34 F.3d 800 (9th Cir.1994).

■ The debt owed by Dr. Doman to the Debtor by virtue of the imposition of sanctions by this Court clearly arose postpetition. The debt owed by the Debtor to Dr. Doman is clearly a prepetition debt. Moreover, if an entity who violates the automatic stay could escape sanctions with impunity by claiming the right of setoff against his prepetition claim, the entity would in effect render the remedy provided for by § 362(h) of the Bankruptcy Code worthless. This is so because the entity who is charged with violating the automatic stay is inevitably a creditor who is holding a prepetition claim. If such creditor is permitted to offset the sanctions against the prepetition claim, the Debtor whose rights have been violated will be left without remedy.

For the reasons stated, it is evident that the affirmative defense of setoff is without merit and is not well taken.

■ The Debtor seeks the imposition of sanctions in the total amount of $6,976. The components of this claim involve the alleged violation by Mr. Stapleton and Mr. Webb of the automatic stay. Counsel for the Debtor deposed Mr. Stapleton in Georgia since Mr. Stapleton was not subject to a subpoena and could not be compelled to appear in this jurisdiction. Counsel for the Debtor also deposed Mr. Webb in Georgia for the same reason. All of the expenses incurred in conjunction with these depositions of Mr. Stapleton, Dr.

Doman and Mr. Webb primarily involved discovery relating to the alleged violations by Mr. Stapleton. Consistent with the remarks made earlier and considering the totally inappropriate conduct of Mr. Stapleton in procuring the Writ of Garnishment, this Court is satisfied that in addition to ordering a refund to the Debtor of all amounts received by Mr. Stapleton and/or Dr. Doman, the Debtor is also entitled to recover as punitive sanctions the sum of $2,000.

Based on the foregoing, this Court is satisfied that the Debtor is entitled to be reimbursed for counsel, travel expenses to Atlanta, the cost of all witness fees and costs of all depositions and the legal services totaling $6,976, plus sanctions in the amount of $2,000 for a total of $8,976.

Count II of the Complaint seeks an injunction to prohibit Dr. Doman from any further violations. There is nothing in this record which would warrant to grant this relief.

A separate final judgment will be entered in accordance with the foregoing.